THE COMMISSIONERS OF THE NEW ORLEANS IMPROVEMENT AND BANKING COMPANY *v.* IVES JEWETT.

Where a mortgage on slaves has been recorded in the mortgage office of the place where the debtor had his domicil or usual place of residence at the time of the inscription, it becomes a vested right (C. C. 3313), and cannot be destroyed by any act of the mortgagor, nor of third persons. Consequently, where the mortgagor subsequently acquired a domicil in another parish, a re-inscription in the parish to which the debtor removes, is not necessary to preserve the mortgage.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

*Marsoudet,* for the appellants.

*McHenry,* for the opponent.

SIMON, J. The plaintiffs are appellants from a judgment which sustains the third opposition of F. W. Brewer to the sheriff's paying over to them the proceeds of the sale of a certain slave specially mortgaged to said plaintiffs, but which was also effected by a judicial mortgage of an anterior date, recorded against the defendant, whilst he resided in another parish.

The facts of this case, are these: The defendant, who was a resident of the parish of Rapides, was sued by Lambeth & Thompson in that parish, in the year 1841, and a judgment was rendered against him by the court of the sixth district, at its May term of that year, for the sum of $5,905, with interest. This judgment was duly recorded in the parish judge's office of the parish of Rapides, on the 29th of June, 1841, and was subse-

quently transferred to the opponent.    In the fall of 1842, the defendant removed his family to New Orleans, and by a notarial act passed on the 12th of January, 1843, leased the St. Louis Hotel for the term of three years, to run from the 1st of November, 1842, at the rate of $6,000 for the first year, $8,000 for the second, and $10,000 for the third.   By the said act he gave a special mortgage to secure the payment of the rent, on several slaves, among which there is one named Caroline ; and he accordingly took possession of the hotel, which he kept until he was turned out in the course of 1843.   He was then sued by the plaintiffs, in whose favor a judgment was rendered against him for $2,300, on the 21st of June, 1843, and a writ of *fi. fa.* having issued against him on the 6th of September following, the same was levied upon the slave Caroline, who was sold by the sheriff on the 22d of November, for the sum of $600.

The lease was duly recorded in the mortgage office in New Orleans, and by the certificate of mortgage produced by the sheriff on the day of the sale, no mortgage was declared to exist on the slave but the one resulting from the recording of the lease.

Parol evidence was adduced on the trial below, showing that the defendant came to New Orleans from Alexandria, with his family, on the 10th of November, 1842 ; that he had with him a negro woman ; that he resided in the parish of Rapides several years before he came down to the city ; that his family now resides in said parish ; that he has alternately resided there himself since 1842, and that he has always had his house there. The witness states that he knew the defendant first in the spring of 1839, that he was then doing business in Alexandria ; and it is admitted that the slave Caroline was the only one that the defendant brought to the city, and had in the hotel, belonging to him.

It is not pretended that the defendant has any other property of sufficient value to satisfy the claim of the third opponent, and against which he could exercise his recourse by virtue of his general mortgage (Code of Practice, art. 403) ; and the only question, therefore, which we have to examine is, whether the subsequent residence of the defendant in another parish, or his

Commissioners of the New Orleans Improvement and Banking Company v. Jewett.

intention to reside there, and select a new domicil, can deprive the opponent of the benefit of the mortgage by him acquired on his debtor's property, previous to the change of residence of the latter? Or, in other words, was the mortgagee bound, in order to preserve his right of mortgage, to cause his judgment to be recorded in the mortgage office of the debtor's new place of residence?

It cannot be controverted that the right acquired by the opponent on his debtor's property, by the recording of his judgment in the parish of Rapides, where his debtor resided, was perfect, and that the judicial mortgage, resulting from said recording, bore upon all the defendant's property situated in that parish, and upon his slaves in whatever parish they might be found, not only during the period that he resided there, but was yet in full force and operation on the very day that he moved from there to come to New Orleans. Art. 3318 of the Civil Code, says that the inscription of mortgages only binds the property of the debtor, when it has been made, *with regard to slaves*, in the office of mortgages *where the debtor has his domicil, or usual residence.* Here, the act of mortgage executed in favor of the plaintiffs was recorded in this city on the 12th of January, 1843, about two months after the debtor had left his previous residence; and it is declared in the act that the slaves mortgaged are free from all incumbrances and mortgages against the mortgagor, although it was undoubtedly known to the parties thereto that said mortgagor had previously resided in another parish, and had just come to New Orleans to lease and occupy the St. Louis Hotel.

Now, on referring to art. 3374, which treats of the extinction or release of mortgages, we find nothing therein provided for the discharge of mortgages on slaves, when the owner thereof has changed his domicil, and the act of mortgage has not been reinscribed in the new parish. The law does not require it, and it seems that, on the contrary, such mortgage must have its full effect, when it has been once acquired by the recording of the act in the office of mortgages *of the place where the debtor has his domicil or usual residence,* which clearly means where *the debtor resides at the time of the inscription;* and that such vested right

cannot be destroyed or discharged but in one of the cases provided for by law. Art. 3333 says, that *the registry preserves the evidence of mortgages during ten years from the day of their dates,* and that they cease to have any effect, if the inscriptions have not been renewed before the expiration of said time; but it does not appear that our legislature ever intended that mortgages on slaves should cease to have their effect, if they were not reinscribed from one parish to another, at every change of domicil of the debtor. This would be requiring more than the law does, and under the principle that a vested right cannot be destroyed but in the manner pointed out by law, we feel no hesitation in declaring at once, though the actual change of residence of the defendant is very questionable, that the renewal of the inscription of the opponent's mortgage in the city of New Orleans was unnecessary, and that his mortgage previously acquired according to law, continued to have its effect on the slaves, notwithstanding the debtor's subsequent change of domicil. In the case of *Hooper* v. *The Union Bank,* 10 Rob. 63, in which this question was raised, but was not decided, we intimated strongly that we would hesitate long before declaring that a creditor, whose mortgage on slaves has been once legally acquired, by the recording of the act, at the time of its execution, in the parish where the owner then resided, is bound to follow the mortgagor into every parish where he may afterwards think proper to reside, in order to reinscribe his said mortgage; and we could not forbear remarking in that case, that it seemed to us that *a mortgage, when lawfully acquired, becomes a vested right,* which cannot be destroyed by any act of the mortgagor or of third persons. The impression under which we were then, has now become our firm and deliberate opinion upon the subject, and we think that Brewer's opposition was properly sustained.

*Judgment affirmed.*